IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TYLER L. MILTON,

                           Plaintiff,
   v.                                                                                                                  OPINION and ORDER

HINTON, MAYFIELD, KLANG,                                                                            24-cv-607-jdp
and SUKOWATY,

                          Defendants.

---

Plaintiff Tyler L. Milton, proceeding without counsel, is incarcerated at Columbia Correctional Institution. Milton alleges that prison staff failed to prevent him from harming himself and then delayed in arranging for emergency medical treatment after he harmed himself. I granted Milton leave to proceed on claims under the Eighth Amendment and under Wisconsin medical negligence law. Dkt. 9.

Defendants move for summary judgment, contending that Milton failed to exhaust his administrative remedies for any of his claims. Dkt. 17. I will grant that motion in part and dismiss Milton's medical care claims from the case. I will also reset the dispositive motions deadline.

ANALYSIS

**A. Exhaustion of administrative remedies**

The Prison Litigation Reform Act (PLRA) requires inmates to exhaust all available administrative remedies before filing a lawsuit in federal court about "prison conditions." 42 U.S.C. § 1997e(a). To comply with § 1997e(a), a prisoner must take each step in the administrative process, *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), which

includes following instructions for filing an initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require," *Pozo*, 286 F.3d at 1025.

To exhaust administrative remedies in Wisconsin, inmates ordinarily must follow the Inmate Complaint Review System process as set forth in Wisconsin Administrative Code Chapter DOC 310. The purpose of these requirements is to give the prison administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006). Failure to exhaust administrative remedies under § 1997e(a) is an affirmative defense that must be proven by defendants. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018).

Defendants also seek summary judgment on Milton's state-law medical negligence claim associated with his Eighth Amendment claim against defendant Sukowaty. The PLRA doesn't apply to Milton's state-law claim. But Wisconsin imposes a similar exhaustion requirement for state law claims, prohibiting prisoners from filing "a civil action or special proceeding . . . with respect to the prison or jail conditions in the facility in which he is or has been incarcerated, imprisoned or detained until the person has exhausted all available administrative remedies that the department of corrections had promulgated by rule." Wis. Stat. § 801.02(7)(b). Because Wisconsin's law is based on the federal PLRA, a court may take guidance from federal PLRA case law. *See Compton v. Cox*, No. 12-cv-837-jdp, 2017 WL 933152, at *6 (W.D. Wis. Mar. 8, 2017) (plaintiff "is free to use federal PLRA case law in analyzing the Wisconsin version").

Milton's claims are against defendants Mayfield, Hinton, and Klang for failing to heed his warnings that he would swallow his eyeglasses to harm himself, and against defendant

2

Sukowaty for unnecessarily delaying in getting him medical treatment afterward. Defendants contend that Milton failed to exhaust his administrative remedies for these claims because the two grievances that he filed about these events were filed too late. Under Wis. Admin. Code § DOC 310.07(2), inmates must file a grievance "within 14 days after the occurrence giving rise to the complaint."

Milton's self-harm incident occurred on March 7, 2024. He filed grievances on April 4 (No. CCI-2024-5100, about inadequate medical treatment) and April 8 (No. CCI-2024-5491) about staff failing to protect him from self-harm). Both of those grievances were rejected for being untimely.

In response, Milton states that that he was placed in observation status immediately following the events, where he was not allowed to file a grievance, and he remained there until March 25, 2024.[1] He states this time in observation rendered the administrative process "unavailable" to him and thus he no longer needed to file a grievance about the events. But he says that he did so anyway, "us[ing] discretion and . . . due diligence." Dkt. 26, ¶ 15.

If the grievance system was unavailable to Milton, then he didn't need to exhaust his administrative remedies. *Ross v. Blake*, 578 U.S. 632, 642 (2016). And defendants do not present facts disputing Milton's statement that he was barred from filing grievances while in observation. But I disagree with Milton that the grievance process was entirely unavailable to him solely because his 14-day limit ran out while he was in observation. The Wisconsin grievance system includes a provision explaining what an inmate should do if he intends to file

---

[1] Milton moved for an extension of time to file his summary judgment response, Dkt. 22 and Dkt. 23, and quickly followed with his response, Dkts. 25–28. I will grant Milton's motions for extension of time and I will consider his response materials.

a grievance past the ordinary 14-day deadline: he should "request to file a late complaint in the written complaint and explicitly provide the reason for the late filing." Section DOC 310.07(2). "[A] late complaint may be accepted for good cause." *Id.*

As part of both of his grievances, Milton indeed sought a good-cause exemption to the 14-day deadline, but the complaint examiner still rejected those grievances as untimely. I'll address each of his grievances separately.

1. **Medical care claims**

For his '5100 grievance about inadequate medical treatment, Milton sought an exemption to the 14-day deadline, stating that the delay was caused by his stint in observation, that three days after his release from observation he wrote to health staff in an attempt to resolve the issue informally as required under Section DOC 310.07(1), and that he didn't receive a response about his medical treatment until April 1. He filed his grievance on April 4.

The institution complaint examiner reviewed Milton's grievance and request for an exemption to the deadline and still concluded that the grievance was untimely, stating the following:

> PIOC Milton requests a good cause exemption for his complaint being filed 14 days after the occurrence giving rise to the complaint. He states the late filing was due to his OBS status from March 7th, 2024 to March 25th, 2024. While this office is always inclined to grant good cause exemptions due to being on OBS status, PIOC Milton did not submit his complaint until 10 days after being taken off OBS status. This is 28 days from the original date of incident. Due to this it is recommended complaint be rejected, per DOC-310.10(6)(e).

Dkt. 19-2, at 2.

I agree with defendants that Milton failed to properly exhaust his administrative remedies with regard to this grievance because it was untimely under the DOC regulations.

4

Milton's 14-day filing window ended on March 21, 2024, while he was in observation. Nothing in the DOC regulations or the relevant case law suggests that Milton's 14-day deadline was tolled by his placement in observation, so he didn't have 14 days from his release to file a grievance. Rather, to qualify for extra time beyond the 14-day deadline, he was required to demonstrate to the hearing examiner good cause for *any* extra time past the 14 days that elapsed before he filed his grievance.

I accept Milton's account that he was barred from filing grievances while in observation, which excuses the delay through his release on March 25. And he was delayed a few days by his required attempt to resolve his complaint informally before filing a grievance. But Milton waited until three days after his release to send that informal correspondence, and then waited until three days after a response to file his grievance. Milton does not suggest what good cause there was for these delays in diligently exhausting his remedies. Based on the undisputed facts, I conclude that Milton failed to properly follow the DOC's exhaustion rules for this grievance, so he failed to exhaust his administrative remedies for his federal- and state-law medical care claims. I will dismiss those claims from this case.

### 2. Failure-to-protect claims

For Milton's '5491 grievance about staff failing to protect him from harming himself, Milton sought an exemption to his deadline, stating that the delay was caused by his stint in observation, that the day after release from observation he wrote to staff in an attempt to resolve the issue informally, and that he got no response.

For the '5491 grievance, the examiner stated the following:

> PIOC Milton requests a "good cause" exemption to submit this complaint beyond the 14 days after the date of occurrence giving rise to the complaint. His reason listed for good cause was his status on OBS from March 7, 2024 until March 25, 2024. He

5

> states he was unable to file a complaint during that time due to being on suicide watch. PIOC Milton submitted complaint #CCI2024-5100 on 04/04/2024. This complaint stems from the same event on 03/07/2024, 9:30AM. In it PIOC Milton alleges he was not provided proper medical care. He also requested a good cause exemption (and was granted) due to being under OBS status from March 7, through March 25, 2024, and missing the 14-day filling deadline. PIOC Milton has submitted this complaint 31 days after the date of the occurrence. It is recommended this complaint be rejected per DOC-310.10 (6)(e).

Dkt. 19-3, at 2.

This is largely the same rationale as the denial of Milton's previous grievance: that his time in observation could be excused, but that he still took too much time after his release to file his grievance. But unlike with the previous grievance, the undisputed facts do not show that Milton wasted any time. He submitted his attempt at informal resolution the day after he was released from observation, and then he didn't hear back from prison staff about it. He filed his grievance after waiting about 13 days for a response. There is no DOC regulation explaining what a prisoner should do when he fails to hear back from prison officials about his attempt at informal resolution. Although neither side mentions this in their briefing, Milton's appeal of his grievance's rejection provides additional explanation: Milton stated that he initially submitted the grievance on March 29 (which matches the date Milton signed the grievance), but it was returned to him because pages were taped together. *Id.* at 12. He then had to wait to re-submit the grievance until Monday, April 8, 2004, because of the DOC regulation stating that inmates generally may file only one grievance per calendar week, § DOC 310.07(7), and he had already submitted the '5100 grievance on April 4.

Under the circumstances, Milton has good cause for all the time that passed between his release from observation and his filing of the '5491 grievance. Defendants suggest that an evidentiary hearing under *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), is necessary to resolve

6

the question of exhaustion. But defendants do not submit any evidence raising a material dispute of fact, so a hearing is unnecessary. Because defendants have not met their burden to prove their exhaustion defense for the '5491 grievance, I will deny their motion for summary judgment regarding that grievance.

### B. Motions to compel discovery

Milton has filed two motions to compel discovery, Dkt. 21 and Dkt. 24. I will have defendants respond to those motions.

### C. Motion to amend the schedule

Defendants move to stay the dispositive motions deadline until resolution of their exhaustion motion. Dkt. 32. I will grant that motion and set a new dispositive motions deadline below.

ORDER

IT IS ORDERED that:

1. Plaintiff Tyler L. Milton's motions for extension of time, Dkt. 22 and Dkt. 23, are GRANTED.

2. Defendants' motion for summary judgment on exhaustion grounds, Dkt. 17, is GRANTED in part as reflected in the opinion above. Plaintiff's federal- and state-law medical care claims are DISMISSED without prejudice.

3. Defendants may have until January 12, 2026, to respond to plaintiff's motions to compel discovery, Dkt. 21 and Dkt. 24.

4. Defendants' motion to amend the schedule, Dkt. 32, is GRANTED. The new dispositive motions deadline is February 9, 2026.

Entered January 5, 2026.

                                              BY THE COURT:

                                              /s/

                                              _____
                                              JAMES D. PETERSON
                                              District Judge