IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TYLER L. MILTON,

                    Plaintiff,

        v.                                                      OPINION and ORDER

SHANE HINTON, JESSECA MAYFIELD,                                      24-cv-607-jdp
and RODNEY KLANG,

                    Defendants.[1]

---

Plaintiff Tyler L. Milton, proceeding without counsel, is incarcerated at Columbia Correctional Institution. Milton harmed himself by swallowing pieces of his metal eyeglasses frame. He brings Eighth Amendment claims against prison staffers who he alleges knew that he was going to harm himself by swallowing his glasses and failed to stop him from doing it. Defendants move for summary judgment. I will grant that motion for Milton's claims against two of the defendants: the undisputed facts show that they had had no reason to think that there was a strong likelihood that Milton would be able to harm himself in that fashion. But I will deny the motion regarding another defendant because there is a dispute of fact over whether he investigated further and discovered that Milton had his glasses with him in his cell.

---

[1] I have amended the caption to include defendants' full names as provided in their submissions, and to remove defendant Laura Sukowaty, who is no longer the subject of any claims.

UNDISPUTED FACTS

Plaintiff Tyler Milton is incarcerated at Columbia Correctional Institution (CCI). Defendants worked at CCI: Shane Hinton was a captain, and Rodney Klang and Jesseca Mayfield were correctional officers.

On the morning of March 7, 2024, defendant Hinton was told by Psychological Services Unit staff that Milton was to be placed on clinical observation status because he swallowed a "segregation pencil." Milton was placed in an interview room. Milton states that he was wearing his eyeglasses when he entered the interview room. But it is undisputed that he wasn't wearing his glasses when defendants Hinton, Klang, and Mayfield came to retrieve him from that room.

Defendants escorted Milton to a holding cell so that a "visual strip search" could be conducted before Milton was placed in an observation cell. Milton passed his clothing through the trap of the holding cell. Klang visually inspected Milton's nude body through the window of the holding cell and didn't find any contraband (I take Klang to mean that he didn't see Milton's eyeglasses either, whether or not they would be considered contraband). Milton was given a suicide-resistant smock. Milton states that he hid his glasses in the smock so that defendants could not see them.

Defendants took Milton to a different room to be seen by a nurse to evaluate him after he swallowed the pencil. Milton stated that he was not feeling an intent to harm himself. The nurse cleared Milton, and defendants took Milton to an observation cell, where staff would check on him every 15 minutes.

Once Milton was in the observation cell, he stated that he had his glasses and was going to break them and harm himself with them. Hinton asked Milton to give him the glasses, but

2

he refused. Hinton heard Milton tap an object that had a metallic ring against the cell door. Defendants believed that the sound was from Milton's wedding band.

Hinton left the observation area briefly and returned within a minute, with Klang and Mayfield still present. Defendants spoke with Milton. Hinton said to the other defendants, "I just can't remember, was he wearing his glasses?" Dkt. 49-1 (placeholder docket entry for Klang's bodycam footage), at 8:33:24 a.m. Hinton looked into Milton's cell and did not see his glasses. Hinton asked Milton to show him his hands, which he did; Milton was not holding glasses. Defendants then left the observation area.

Hinton states that he believed Milton's threat to be insincere, but to be sure, he reviewed video footage from the hallway outside the interview room. Hinton states that he didn't see anything on the video suggesting that Milton entered or left the room with his glasses.

Klang returned to the observation area and conducted rounds every 15 minutes. About 20 minutes after being placed in the observation cell, Milton showed Klang pieces of his metal eyeglasses frame and moved to the back of his cell. Klang says that Milton appeared to swallow the pieces; Milton says that he did swallow them. Milton was taken to the Health Services Unit and he later returned to his observation cell.

After Klang completed several more observation rounds, Milton appeared unwell and he complained that he was not feeling well. Klang reported Milton's condition multiple times to prison medical staff. Milton states that he suffered such severe pain that he passed out and awoke in his own urine and feces. He also coughed up and vomited blood. Milton was eventually taken to the Health Services Unit for X-rays. He was taken to the hospital and had two surgeries to remove the eyeglasses pieces.

I will discuss additional facts as they become relevant to the analysis.

## ANALYSIS

I granted Milton leave to proceed on claims against defendants Hinton, Klang, and Mayfield for failing to protect Milton from harming himself by ingesting pieces of his metal glasses frame.

Under the Eighth Amendment, a claim that prison staff failed to prevent a prisoner from harming himself has four elements: (1) there was a strong likelihood that the prisoner would seriously harm himself in the near future; (2) the defendant knew of that strong likelihood; (3) the defendant consciously failed to take reasonable measures to prevent the prisoner from harming himself; and (4) the defendant's actions or inactions caused the prisoner harm. A defendant's conscious failure involves intentional or reckless conduct, not mere negligence.[2] *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *see also Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006) (standard is "akin to criminal recklessness, which requires that the defendant be aware of and disregard an excessive risk of serious harm to the inmate").

Defendants contend that they didn't consciously disregard a risk of harm to Milton. They support this contention by arguing that they didn't believe that Milton would harm himself because he didn't actually possess his glasses, he had previously stated that he had no desire to harm himself, and in any event he would be checked every 15 minutes in his observation cell. Portions of this argument are unpersuasive: a reasonable jury could conclude

---

[2] Milton sought to bring Wisconsin-law negligence claims, but I dismissed those claims for his failure to show that he complied with Wisconsin's notice-of-claim statute, Wis. Stat. § 893.82(3). Dkt. 9, at 4–5.

that Milton's statements that he didn't want to harm himself were contradicted by him swallowing the segregation pencil and then explicitly threatening to consume his glasses. And the 15-minute-checkup rule in observation wouldn't necessarily protect a prisoner from harming himself in the minutes between check-ins.

Still, given the facts here no reasonable jury could conclude that defendants actually believed that there was a strong likelihood that Milton would harm himself—at least during the events up to the parties' discussion outside of Milton's observation cell. It is undisputed that Milton said that he would harm himself with his glasses. But "prison guards are neither required nor expected to believe everything inmates tell them." *Olson v. Morgan*, 750 F.3d 708, 713 (7th Cir. 2014). They had good reason to believe that Milton was lying about possessing his glasses: Klang had strip-searched him without finding glasses, and defendants looked into his observation cell and made Milton show them his empty hands.

Milton admits that he concealed the glasses from defendants; it's not entirely clear how he was able to do so. Milton states that Klang didn't conduct a proper strip search, but any failure by Klang to adhere to prison strip-search protocols doesn't itself violate the Constitution. *Pulera v. Sarzant*, 966 F.3d 540, 551 (7th Cir. 2020). Nor does any negligence on Klang's part in conducting that search violate the Constitution.

Defendants also heard Milton tap something inside the observation cell that made a metallic ring. But it's undisputed that Milton had his wedding band inside the cell. Milton argues that wedding bands weren't allowed in observation cells, but even if that is true, that doesn't indicate defendants' conscious disregard—he said that he would swallow his glasses, not his wedding band. Because nothing in the facts could lead a reasonable jury to conclude that Klang and Mayfield perceived a strong likelihood of Milton harming himself given their

5

efforts to ensure that he didn't possess his glasses, I will grant summary judgment to defendants Klang and Mayfield.

That leaves defendant Hinton. After stating that he didn't remember whether Milton ever had his glasses during these events, Hinton left the area to review video footage of the hallway outside the interview room where defendants first encountered Milton. Hinton states that the video doesn't show Milton wearing his glasses entering or leaving that room. Ordinarily, Hinton's double-check would show the absence of conscious disregard. And if the video showed that Milton wasn't wearing his glasses then, Hinton would be entitled to summary judgment for the same reasons that I granted summary judgment to the other defendants. But defendants did not submit this video, and Milton states that he was indeed wearing his glasses when he entered the interview room, raising a reasonable inference that Hinton saw Milton wearing his glasses in the video. That information, coupled with the glasses otherwise being unaccounted for, Milton's statements that he had his glasses and would harm himself with them, Milton clanging a metal object in his cell, and Milton's act of self-harm directly preceding these events, is enough for a reasonable jury to conclude that Hinton was aware of a strong likelihood that Milton would harm himself by swallowing his glasses, yet failed to do anything to stop him after watching the video.

Defendants also contend that Hinton is entitled to qualified immunity on this claim. Under the doctrine of qualified immunity, a plaintiff may not obtain damages for a constitutional violation against a public official unless the plaintiff shows that the official violated clearly established law. *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 725 (7th Cir. 2013). A clearly established right is one that is sufficiently clear such "that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,*

566 U.S. 658, 664 (2012). Law is "clearly established" only if it is found in Supreme Court precedent, controlling circuit authority, or "a consensus of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Defendants contend that Milton can't cite any authority establishing that prison officials acted with conscious disregard in factual circumstances similar to these. But the Court of Appeals for the Seventh Circuit has warned against applying qualified immunity in Eighth Amendment cases because the merits of those claims and qualified immunity "effectively collapse into one" question in many circumstances. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). Because the legal standard for claims like Milton's is well established and the disputes raised regarding such claims are largely factual rather than legal, "[i]f there are genuine issues of fact concerning th[e] elements [of the claim], a defendant may not avoid trial on the grounds of qualified immunity." *Id.*; *see also Est. of Clark v. Walker*, 865 F.3d 544, 551 (7th Cir. 2017) ("Clark's right to be free from deliberate indifference to his risk of suicide while he was in custody was clearly established at the time of his death in 2012.").

So Hinton is not entitled to summary judgment by way of qualified immunity. I will deny defendants' motion for summary judgment regarding Milton's Eighth Amendment claim against Hinton, and that claim will proceed to trial.

Defendants also ask me to sanction Milton by issuing him a "strike" under 28 U.S.C. § 1915(g) for filing a frivolous lawsuit about his "transparent effort to make work for the defendants and to engineer an Eighth Amendment claim." Dkt. 45, at 10. But I am not dismissing this case as frivolous so I will not assess Milton a strike.

ORDER

IT IS ORDERED that:

1.  Defendants' motion for summary judgment, Dkt. 44, is GRANTED in part.

2.  Defendants Sukowaty, Klang, and Mayfield are DISMISSED from the case.

3.  Defendants' motion for sanctions, Dkt. 44, is DENIED.

Entered May 5, 2026.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge